UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-21746-CIV-MORENO/GOODMAN

NATIONAL EQUESTRIAN LEAGUE, LLC, et al.,

  Plaintiffs,

v.

KEEAN WHITE, et al.,

  Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFFS/COUNTER-
DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS
AND TO STRIKE AFFIRMATIVE DEFENSES**

  Plaintiffs/Counter-Defendants, National Equestrian League, LLC ("NEL" or "National") and JumpingClash, S.I. ("JumpingClash") (together, "Plaintiffs"), filed a second amended complaint against Defendants/Counter-Plaintiffs, Matthew Morrissey, Keean White, Angelstone Farms, Inc ("Angelstone"), Morrissey Management Group, LLC ("MMG"), and Major League Show Jumping, LLC ("Major League") (together, "Defendants"), alleging: (1) copyright infringement against all Defendants; (2) breach of contract against Angelstone; (3) breach of contract against MMG; (4) breach of contract against Morrissey; (5) fraud against MMG, Angelstone, Morrissey, and White; (6) negligent misrepresentation against MMG, Angelstone, Morrissey, and White; (7)

tortious interference against all Defendants; (8) conspiracy against all Defendants; (9) breach of fiduciary duty against MMG, Angelstone, Morrisey, and White; (10) theft of trade secrets -- Defend Trade Secrets Act ("DTSA") against all Defendants; (11) theft of trade secrets -- Florida Uniform Trade Secrets Act ("FUTSA") against all Defendants; (12) unjust enrichment against all Defendants; (13) copyright infringement against all Defendants; and (14) unfair business practices against all Defendants. [ECF No. 61].

Defendants filed an answer to Plaintiffs' second amended complaint, asserting forty-three affirmative defenses and alleging five counterclaims on behalf of Angelstone for: (1) declaratory relief against NEL; (2) breach of contract against NEL; (3) breach of contract against NEL; (4) breach of implied covenant of good faith and fair dealing against NEL; and (5) tortious interference with contractual relationship against JumpingClash. [ECF No. 70].

Plaintiffs filed a motion to dismiss all counterclaims and to strike affirmative defenses 4, 9, 11, 16, 17, 18, 23-29, 35-38, and 40-43. [ECF No. 73]. Defendants filed a response contesting Plaintiffs' requested relief and also withdrawing affirmative defenses 35-38 and 40-43. [ECF No. 77]. Plaintiffs filed a reply. [ECF No. 82].

United States District Judge Federico A. Moreno referred to the Undersigned rulings on all pretrial, non-dispositive matters and a Report and Recommendations on all dispositive matters. [ECF No. 30].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiffs' motion to dismiss Defendants' counterclaims and certain affirmative defenses.

## I.      Background

This breach of contract and intellectual property theft lawsuit arises out of the parties' relationships during the early formative stages of an equestrian competition. Plaintiffs have accused Defendants of breaching their contracts and stealing their trade secrets and copyrights to form a competing equestrian competition.

Defendants have collectively asserted numerous affirmative defenses to these accusations. In addition, Defendant Angelstone has levied five counterclaims stemming from the alleged breach of two contracts it entered into with NEL, both of which are also the subject of Plaintiffs' numerous claims against Defendants. In support of its counterclaims, Angelstone includes twenty-six general allegations in addition to its count-specific allegations. Angelstone also attached copies of the two contracts at issue.

Plaintiffs now ask this Court to dismiss all of Angelstone's Counterclaims and to strike thirteen of Defendants' affirmative defenses.

## II.      Legal Standard

### a.   Dismissal of Counterclaims

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Geter v.*

*Galardi South Enter., Inc.*, 43 F. Supp. 1322, 1325 (S.D. Fla. 2014) (quoting *Great Am. Assur. Co. v. Sanchuk*, LLC, No. 8:10–cv–2568–T–33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)). In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). When conducting this analysis, the Court may typically examine only the four corners of the complaint. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff must do more than merely label his or her claims." *Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1325 (S.D. Fla. 2004) (citing *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996)).

### b.  Striking Affirmative Defenses

The Court, either on its own or on motion made by a party, is permitted to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(1)-(2). "Courts 'have broad discretion when considering a motion to strike,' however, 'striking defenses from a pleading' remains a

'drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken material has 'no possible relation to the controversy.'" *FAST SRL v. Direct Connection Travel, LLC*, 330 F.R.D. 315, 317 (S.D. Fla. 2018) (quoting *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013)).

Unlike the pleading requirements for a claim for relief under Federal Rule of Civil Procedure 8(a), which must comply with *Twombly* and *Iqbal*, when a party responds to a pleading, it must only "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b); *see also Laferte v. Murphy Painters, Inc.*, Case No. 17-CIV-60375, 2017 WL 2537259, at *2 (S.D. Fla. June 12, 2017) ("[A]ffirmative defenses are not subject to the heightened pleading standard elucidated in *Twombly* and *Iqbal*" and "[t]he straightforward construction of Rule 8 delineates different standards for pleadings generally, and those applicable defenses.").

## III. Analysis

### a. Counterclaims

Plaintiffs ask this Court to dismiss each of Angelstone's five counterclaims. As discussed below, the Undersigned **respectfully recommends** the District Court **deny** Plaintiffs' motion to dismiss the counterclaims.

### i. Count I: Declaratory Relief (Angelstone v. National)

In Count I, Angelstone seeks a declaratory judgment "stating that the Collaboration Agreement is illusory and therefore unenforceable because it purports to give National unfettered and exclusive discretion when, and if, any individuals may be accepted into the 'Consultant Potential Team List' of individuals National deems qualified to acquire a team and compete in National's league." [ECF No. 70, p. 33].

According to Angelstone, it entered into the Collaboration Agreement with National with the goal of having Angelstone identify individuals willing to compete in National's proposed league. [ECF No. 70, p. 29]. Angelstone takes issue with National's reading of the Collaboration Agreement, which National believes allows it unlimited discretion "regarding when, and if, any individuals may be accepted into the 'Consultant Protentional Team List' of individuals National deems qualified to acquire a team and compete in National's league." [ECF No. 70, p. 33].

Plaintiffs argue that Count I must be dismissed because declaratory judgment claims must look forward rather than backwards, and that the requested declaratory judgment is simply an attempt by Angelstone to "get relief for alleged unpaid compensation." [ECF No. 73, pp. 7-8]. As a secondary argument, Plaintiffs aver that a breach of contract claim and a declaratory judgment claim based on the same facts cannot coexist.

Defendants respond that Plaintiffs mischaracterize Angelstone's request for relief and say that what Angelstone actually seeks is simply and properly "a declaration that the Collaboration Agreement is illusory and therefore unenforceable." [ECF No. 77, p. 4]. Plaintiffs reply that this count is a "procedural gimmick to seek a ruling on National's breach of contract claim by the Court through a declaration on a purported illusory contract defense." [ECF No. 82, p. 2].

28 § U.S.C. 2201(a) is the proper law under which to analyze Angelstone's counterclaim. Under *Erie*, in a diversity jurisdiction case, the court will apply federal law for issues of procedure and state law for substantive issues. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As the Eleventh Circuit has stated, "Florida's Declaratory Judgment Act, found in Chapter 86 of the Florida Statutes, is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880-81 (11th Cir. 2016). Thus, "[t]here is little doubt . . . that [a] district court [must] apply the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, rather than the state declaratory judgment act." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n. 3 (11th Cir. 2005).

Although Defendants attempt to proceed under only Chapter 86, Florida Statutes (Florida's Declaratory Judgment Act), the Undersigned will construe the count as a claim for declaratory relief under 28 § U.S.C. 2201(a). *Coccaro*, 648 F. App'x at 881 (holding that the district court did not err in construing declaratory relief claim brought, in part, under

state law, as one brought under 28 U.S.C. § 2201 exclusively); *Cf. Vernell v Nuvell Credit Co., LLC*, No. 15-cv-674, 2016 WL 931104, at *2 (M.D. Fla. Mar. 11, 2016) (when there was no prejudice to the opposing party, it was proper to assess Counterclaim under correct jurisdictional statute despite pleading's citation to the incorrect statute).

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[A] claim for declaratory judgment must be supported by allegations that create a reasonable inference of a continuing and substantial controversy." *Liotto v. Hartford Ins. Co. of the Midwest*, No. 8:11-CV-02290-EAK, 2012 WL 646257, at *4 (M.D. Fla. Feb. 28, 2012).

"A dispute over a contract's interpretation may constitute a sufficient controversy." *Wells Pharmacy Network, LLC v. Regul. Compliance Assocs., Inc.*, No. 16-cv-319, 2016 WL 6106746, at *6 (M.D. Fla. Sept. 28, 2016) (citing *Maryland Cas. Co. v. Smartcop, Inc.*, No. 4:11-CV-10100-KMM, 2012 WL 2675476, at *2 (S.D. Fla. July 6, 2012)). "[A] specific, concrete threat of litigation may also suffice." *Id.* In *Wells*, based on a vague billing provision, the plaintiff sought declaratory relief that the contact was illusory and, thus, unenforceable. *Id.* at *6. Like the *Wells* parties, Plaintiffs and Defendants dispute the

Collaboration Agreement's interpretation and its enforceability[1], which "present[s] a substantial, ongoing controversy and an actual, present need for a declaration of whether the Contract is enforceable. *Id.*

Thus, Defendants have sufficiently plead a claim for declaratory relief.

Plaintiffs next argue that the declaratory relief claim is duplicative of Angelstone's breach of contract claim, which requires dismissal of the declaratory relief claim. [ECF No. 82]. United States District Court Judge Donald L. Graham's analysis on this issue is instructive:

> As stated in Federal Rule of Civil Procedure 57, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Defendant's argument is almost identical to that raised by the defendant in *Feldkamp*. The court for the Middle District of Florida denied the defendant's motion to dismiss Feldkamp's complaint, stating, "[d]efendant argues that no claim can be stated for a declaratory judgment because plaintiffs have an adequate legal remedy, that is, the breach of contract claim in Count II. The Court concludes that the availability of an adequate legal remedy does not

---

[1]     *Compare* [ECF No. 61, ¶ 144] ("Angelstone also breached the [the Collaboration Agreement] by failing to provide its services to National, including providing teams for NEL and providing all the reasonably necessary information, resources and efforts for NEL's project.") *with* [ECF No. 70, ¶ 16] ("[D]espite Angelstone performing its contractual obligations to the maximum extent possible, and within the agreed-upon timeframe, its efforts to close on teams for National's league were frustrated by National. Among other things, National failed to provide Angelstone with the "NEL Team Documents" referenced in the Collaboration Agreement to allow those individuals and teams identified by Angelstone to enter into contracts with National to acquire a team in National's league.").

Clearly, the parties disagree about whether Angelstone's efforts constitute compliance or a breach of the Collaboration Agreement.

preclude a cause of action for a declaratory judgment." *Feldkamp v. Long Bay Partners*, LLC, No. 2:09-CV-253-FTM29SPC, 2010 WL 3610452, at *5 (M.D. Fla. Sept. 14, 2010); *see also Banta Properties, Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2010 WL 11440790, at *2 (S.D. Fla. Nov. 30, 2010) ("the mere availability of an adequate legal remedy does not preclude a cause of action for a declaratory judgment.").

*Villanueva v. Geovera Specialty Ins. Co.*, 20-cv-24774, 2020 WL 9065884, at *2 (S.D. Fla. Dec. 31, 2020). Moreover, 28 U.S.C. 2201(a) allows a party to seek declaratory relief "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Because Defendant Angelstone has adequately plead a claim for declaratory relief, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiffs' request to strike Count I of Angelstone's Counterclaims.

### ii.   Count II: Breach of Contract (Angelstone v. National)

Defendant Angelstone asserts Count II of its Counterclaims as an alternative to Count I. [ECF No. 70]. In Count II, Angelstone alleges: (1) Angelstone and National entered into the Collaboration Agreement and exchanged consideration; (2) Angelstone substantially performed its obligations under the Collaboration Agreement; (3) National breached the Collaboration Agreement by refusing to pay Angelstone the commissions and compensation it was owed; and (4) Angelstone was damaged because of National's breach. *Id.* at ¶¶ 37-41.

"To state a claim for breach of contract under Florida law, a plaintiff must allege: (1) the existence of a contract; (2) a breach of that contract; (3) causation; and (4) damages." *Energy Smart Indus., LLC v. Morning View Hotels-Beverly Hills*, LLC, 112 F. Supp.

3d 1330, 1334–35 (S.D. Fla. 2015) (citing *Handi-Van, Inc. v. Broward Cnty.*, 116 So.3d 530, 541 (Fla. 4th DCA 2013)). Thus, on its face, Angelstone's counterclaim alleges all the necessary elements.

Nonetheless, Plaintiffs argue this claim must be dismissed, claiming that Angelstone failed to allege a breach because

> the contract only makes compensation due if a complex series of events transpires where a potential team owner (not potential riders) is accepted, at National's discretion, as having been brough to National by Angelstone and meets certain other requirements, binding NEL Team Documents are entered with the approved team owner, the potential team owner has complied with the terms of the NEL Team Documents "including payment of the amounts due to the Company" and the "cash amount is received on an unconditional and irrevocable (not subject to adjustments) basis.

[ECF No. 73, p. 8].

The primary case upon which Plaintiffs rely is *Energy Smart Indus., LLC*, 112 F. Supp. 3d 1330, where the District Court granted a *summary judgment motion* on the basis that no breach of contract occurred. As Defendants' response argues, Angelstone's claim is based on substantial performance of its contractual duties. [ECF No. 77].

Defendant Angelstone's counterclaim alleges the following facts relevant to its substantial performance argument: (1) Angelstone entered into an agreement with National to identify individuals willing to purchase teams for the NEL; (2) Angelstone would be paid a commission as set out in the Collaboration Agreement; (3) Angelstone worked diligently for four months and identified 68 individuals or groups willing to acquire teams and compete in the NEL; (4) National approved these individuals and

deemed them qualified to acquire a team and compete in the NEL; (5) National then refused to provide the NEL Team Documents which would allow the identified and approved individuals to acquire a team; and (6) without those documents from National, Angelstone was unable to finalize the documents. [ECF No. 70, ¶¶ 6-17].

Plaintiffs don't respond to this argument in their reply and, again, cite to *Energy Smart Indus.*, LLC, 112 F. Supp. 3d 1330 as authority requiring dismissal. As explained further on in *Energy Smart Indus.*:

> Under Florida law, where a party's incomplete performance is nonetheless substantial, such that it is nearly equivalent to what was bargained for, the breaching promisor is entitled to recover the full contract price less whatever damages are suffered by the promisee on account of the promisor's non-material breach. *Nat'l Constructors, Inc. v. Ellenberg*, 681 So.2d 791, 793 (Fla. 3d DCA 1996) (quoting *Ocean Ridge Dev. Corp. v. Quality Plastering, Inc.*, 247 So.2d 72, 75 (Fla. 4th DCA 1971)). . . . [T]he doctrine of substantial performance applies only where the promisor's nonperformance was unintentional. *Nat'l Constructors, Inc.*, 681 So.2d at 793; *Lockhart v. Worsham*, 508 So.2d 411, 412 (Fla. 1st DCA 1987); *Lazovitz, Inc. v. Saxon Constr., Inc.*, 911 F.2d 588, 592 (11th Cir. 1990).

112 F. Supp. 3d at 1335.

Said differently, "[s]ubstantial compliance or performance is that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the other party the benefit of the bargain." *Quantum Cap., LLC v. Banco de los Trabajadores*, No. 14-CV-23193, 2015 WL 12259226, at *7 (S.D. Fla. Dec. 22, 2015). "The question of whether there has been

substantial performance, however, is **normally a question of fact** for the trier of fact to resolve based on all of the relevant evidence." *Id.* (emphasis added).

While the Undersigned takes no position, and could not at this stage of the proceedings, as to whether Angelstone will be able to establish that it substantially performed its obligations under the contract at summary judgment or at trial, when viewing the facts as alleged in the light most favorable to Angelstone, it has adequately plead a claim for breach of contract. *Watts*, 495 F.3d at 1295 (holding that when reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff).

Therefore, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiffs' motion to dismiss Count II of Defendant Angelstone's Counterclaims.

### iii.   Breach of Contract (Angelstone v. National)

In Angelstone's second breach of contract counterclaim, it contends that National breached another contract, alleging the following facts: (1) Angelstone and National entered into the Toronto Consultancy Agreement; (2) Angelstone substantially performed its obligations; (3) National breached the agreement by failing to pay Angelstone the full amount of compensation owed; and (4) Angelstone was damaged by this breach.

Again, on its face, this counterclaim properly pleads the elements of a breach of contract under Florida law. Here, however, Plaintiffs argue that Defendants' claim must

be dismissed because no breach occurred. In support of this argument, Plaintiffs attach an email from Keean White to Luis Pablo, which says, in pertinent part, "[t]hank you for payment on the [T]oronto contract." [ECF No. 73-1]. The majority of the text in the email is redacted. *Id.*

The Undersigned is not permitted to consider this document at the motion to dismiss stage.[2] *Austin v. Mod. Woodman of Am.*, 275 F. App'x 925, 925 (11th Cir. 2008) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."); *Mendoza v. Disc. C.V. Joint Rack & Pinion Rebuilding, Inc.*, No. 13-24081-CIV, 2014 WL 979065, at *1 (S.D. Fla. Mar. 13, 2014) ("In determining a motion to dismiss, the court must only look to the four corners of the Complaint and any attached exhibits.").

Moreover, even if the Undersigned were able to consider the document, this email, by itself, does not conclusively disprove that there are no additional outstanding payments due to Angelstone. It does not say, for example, "Thank you for paying the Toronto contract in full. Now that this contract is complete and nothing more is owed by National, I hope we can work together in the future." It does not even say "thank you for your payment *in full* on the Toronto contract."

---

[2]     Defendants advance this proposition in their response. Although Defendants happen to be correct on the law, their cited case, *Silver Creek Farms, LLC v. Fullington*, 2017 WL 8890666 (S.D. Fla. May 8, 2017), does not stand for this proposition.

14

In requesting dismissal, Plaintiffs are not arguing the purportedly legal insufficiency of this claim, they are arguing the merits, which is improper in a motion to dismiss. *See Hansen v. Geovera Specialty, Ins., Co.* No. 07-cv-1243, 2008 WL 816686, at *3 (M.D. Fla. Mar. 26, 2008) ("Defendant essentially argues the merits of Plaintiffs' breach of contract claim, which is improper on a motion to dismiss.")

Construing the facts in the light most favorable to Defendants, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiffs' motion to dismiss Count III of Angelstone's counterclaims.

### iv. Count IV: Breach of the Covenant of Good Faith and Fair Dealing (Angelstone v. National)

In Count IV, Angelstone alleges (1) a contract existed; (2) Angelstone substantially completed the contract to the best of its ability; (3) after this, National failed or refused to discharge its contractual responsibilities; (4) National's refusal unfairly frustrated the contract's purpose and disappointed Angelstone's expectations; and (5) Angelstone was damaged. [ECF No. 70, ¶¶ 13-16, 52-60].

In Florida, the elements of breach of implied covenant of good faith and fair dealing are: (1) existence of a contract; (2) the plaintiff did all, or substantially all, of the significant things the contract required it to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant's conduct was not consistent with the parties' reasonable expectations under the contract; and (5) the plaintiff was damaged. *See* Fla. Std. Jury Inst. (Civ.) 416.24.

15

The Eleventh Circuit has summarized these elements, stating:

> A claimant asserting a cause of action for breach of the implied covenant must allege 'a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party.'

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (applying Florida law)).

In addition to requiring those elements, Florida law also requires two additional elements. First, the claim "must 'relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a *source of breach* when all other terms have been performed pursuant to the contract requirements." *Friedel v. Sun Comtys., Inc.*, 2021 WL 3732992, at *4 (11th Cir. 2021) (emphasis added) (quoting *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1235 (Fla. 4th DCA 2001)). Second, the implied covenant of good faith "'is a gap-filling default rule,' which comes into play 'when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards.'" *Speedway SuperAmerica, LLC v. Tropic Enters., Inc.*, 966 So. 2d 1, 3 (Fla. 2d DCA 2007) (quoting *Publix Super Mkts, Inc. v. Wilder Corp. of Del.*, 876 So. 2d 652, 654 (Fla. 2d DCA 2004)).

Plaintiffs claim that Angelstone's allegation that National refused to provide the NEL Team Documents to allow Angelstone to finalize contracts or refused to discharge its contractual responsibilities is a "simple misdirection as there is no contractual obligation for National to provide Angelstone with NEL team documents." [ECF No. 73, p. 10]. Defendants counter that Plaintiffs' logic is circular: i.e., National's only requirement under the contract was to pay Angelstone after the documents were signed; National was the only party with possession of the documents; National, despite being a party to the contract, had no obligation to provide the documents; and because Angelstone never got the documents (which National had no obligation to provide) signed, it did not breach the contract.

The Undersigned agrees that Plaintiffs' logic is circular. National claims that it did not owe Angelstone a commission because the NEL Team Documents had not been signed, which was a condition precedent. Yet, it also claims that it had no obligation to provide Angelstone with the NEL Team Documents. Thus, by its own claim, it had "the power to make a discretionary decision without defined standards."

This is another attempt by Plaintiffs to attack the *merits* of the counterclaim, rather than the legal sufficiency. Angelstone has sufficiently alleged the five requisite elements for breach of the covenant of good faith and fair dealing and has also established this is attached to an express breach of the contract and meant to fill in as a "gap-filling" rule or to address a situation in which National has unfettered discretion.

Therefore, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiffs' motion to dismiss Count IV of Angelstone's Counterclaims.

### v. Count V: Tortious Interference with Contractual Relationship (Angelstone v. JumpingClash)

In Count V, Angelstone alleges (1) it had a contract with National; (2) JumpingClash was aware of the contract; (3) JumpingClash interfered with the contract by causing National to refuse to pay Angelstone; (4) JumpingClash was not a party to the contract and no legal justification or privilege existed; and (5) Angelstone was damaged. [ECF No. 70, ¶¶ 64-69].

In Florida, the elements to sustain a cause of action for tortious interference with contractual relationship are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) absence of any justification or privilege; and (5) damages resulting from the breach. *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Florida Tel. Corp. v. Essig*, 468 So.2d 543, 544 (Fla. 5th DCA 1985)).

Plaintiffs initially argue that JumpingClash is not a stranger to the contract and had an economic interest in the NEL. In their reply, Plaintiffs take it a step further and argue that JumpingClash, as the owner of National, is functionally a party to the contract. [ECF Nos. 73; 82]. Defendants concede that "[a]t best, JumpingClash may be an interested third party to the Collaboration Agreement." [ECF No. 77, p. 14].

18

Whether JumpingClash is essentially a party to the agreement, is an interested third party, or is a complete stranger is an important fact in an allegation of tortious interference.

If JumpingClash is essentially a party to the Collaboration Agreement, then it cannot be held liable for interfering with the Collaboration Agreement. *M&M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333 (11th Cir. 2020) (affirming summary judgment on tortious interference claim against an agent of the trust who "basically [was] the trust" because "[s]ubjecting a contracting party to interference liability would convert breach of contract into a tort, which is clearly impermissible").

However, if JumpingClash is merely an interested third party, then it could be liable for any purposeful causing of a breach. *CapitalSource Bank v. MI Prop. Holdings, LLC*, No. 12-21749, 2012 WL 12886633 (S.D. Fla. Aug. 3, 2012) (denying motion to dismiss tortious interference claim against individual who was 33% owner of contracting party because "a privilege to interfere with a third party's conduct does not include the purposeful causing of a breach of contract." (internal citations omitted)).

If JumpingClash is neither a functional party nor an interested third-party, then it enjoys no privilege or justification against interference. *Cf. Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999) ("For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship.").

The Undersigned is not now tasked with addressing these factual contentions which, based on the parties' pleadings, appear to be in dispute. These disagreements are better addressed through discovery, summary judgment motions, and, if needed, trial. Plaintiffs again prematurely attempt to have this court rule on the merits, rather than the sufficiency, of Angelstone's claim.

Angelstone has sufficiently *plead* a claim of tortious interference. It claims that JumpingClash is not a party to the Collaboration Agreement and no justification or privilege existed. [ECF No. 70, ¶¶ 65, 68]. Whether Angelstone will prevail on a motion for summary judgment or at trial is a question to be left for another day.

For these reasons, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiffs' motion to dismiss Count V of Angelstone's counterclaims.

### b. Affirmative Defenses

Plaintiffs seek to strike affirmative defenses, 9, 11, 16, 17, 18, and 23-29[3] on the basis that the affirmative defenses either fail to set out a basic factual basis or are vague and undeveloped. [ECF No. 73]. Plaintiffs do not pinpoint specific objections to any individual defense; instead, Plaintiffs rely on only these general alleged deficiencies. Plaintiffs presents no additional argument in their Reply. [ECF No. 82]. Defendants, however, provide more individualized justification for each of their affirmative defenses,

---

[3]     Although Plaintiffs previously sought to also strike affirmative defenses 35-38 and 40-43 [ECF No. 73], Defendants withdrew those affirmative defenses [ECF No. 77] and the issue is now moot.

offering case law in support of the legitimacy of the defense. [ECF No. 77]. Because

Plaintiffs do not challenge the legitimacy of any particular affirmative defense, the

Undersigned will address them collectively.

Plaintiffs seek to strike the following affirmative defenses on the basis that they

fail to set out a factual basis or are vague and undeveloped:

4. With respect to Counts I and XIII, JumpingClash, S.L.'s claims of copyright infringement are barred in whole or in part because Defendants' allegedly infringing works constitute fair use of the copyrightable elements of the copyrighted materials referenced in the Second Amended Complaint.

9. With respect to Count II, NEL's claim for breach of contract is barred in whole or in part because Angelstone Farms, Inc. substantially performed its contractual obligations under the so-called "Collaboration Agreement" attached to the Second Amended Complaint.

11. With respect to Counts II-IV, Plaintiffs' claims of breach of contract are barred in whole or in part to the extent Plaintiffs suffered no damages from the breach of contract. A breach of contract is only actionable if Plaintiffs suffered damages as a result of the breach.

16. With respect to Count V, Plaintiffs' claims of fraud are barred in whole or in part because Plaintiff's fraud claim is based on a promise to do something in the future, not a past or existing fact, and Plaintiffs cannot show that Defendants did not intend to perform at the time the promise to perform in the future was made.

18. With respect to Count VII, Plaintiffs' claims of tortious interference are barred in whole or in part because Defendants' actions did not cause the severance of any contracts or business relationships; Plaintiffs' abandonment of its plan for National Equestrian League did.

23. With respect to Count X, Plaintiffs' claims of trade secret misappropriation under the Defendant Trade Secrets Act (DTSA) are barred in whole or in part because some or all of the information Plaintiffs claim was misappropriated by Defendants does not constitute a "trade

secret" as the term is defined by U.S.C. 1839(3) because it is not a "pattern," "plan," "compilation," "program device," "formula," "design," "prototype," "method," "technique," "process," "procedure," "program," or "code" entitled to protection under the DTSA.

24. With respect to Count XI, Plaintiffs' claims of trade secret misappropriation under the Florida Uniform Trade Secret Act (FUTSA) are barred in whole or in part because some or all of the information Plaintiffs claim was misappropriated by Defendants does not constitute a "trade secret" as the term is defined by subsection 688.002(4), Florida statutes, because the information is not a "program," "device," "method," technique," or "process" entitled to protection under the FUTSA.

25. With respect to Counts X and XI, Plaintiffs' claims of trade secret misappropriation under both the DTSA and FUTSA are barred in whole or in part because some or all of the information Plaintiffs claim was misappropriated by Defendants does not constitute a "trade secret" because the information lacks the requisite independent economic value derived from not being generally known or readily ascertainable through proper means. 18 U.S.C. 1839(3); 688.002(4), Fla. Stat.

26. With respect to Counts X and XI, Plaintiffs' claims of trade secret misappropriation under both the DTSA and FUTSA are barred in whole or in part because some or all of the information Plaintiffs claim was misappropriated by Defendants does not constitute a "trade secret" because the information is widely attainable using publicly available sources and/or is known outside of Plaintiffs' business. 18 U.S.C. 1839(3); 688.002(4), Fla. Stat.

27. With respect to Counts X and XI, Plaintiffs' claims of trade secret misappropriation under both the DTSA and FUTSA are barred in whole or in part because some or all of the information Plaintiffs claim was misappropriated by Defendants does not constitute a "trade secret" because Plaintiffs did not take reasonable measures to maintain the information's secrecy. 18 U.S.C. 1839(3); 688.002(4), Fla. Stat.

28. With respect to Counts X and XI, Plaintiffs' claims of trade secret misappropriation under both the DTSA and FUTSA are barred in whole or in part because some or all of the information Plaintiffs claim was misappropriated by Defendants does not constitute a "trade secret"

because Plaintiffs do not own the information they claim was misappropriated by Defendants. 18 U.S.C. 1839(3); 688.002(4), Fla. Stat.

29. With respect to Counts X and XI, Plaintiffs' claims of trade secret misappropriation under both the DTSA and FUTSA are barred in whole or in part because, to the extent Defendants were provided with any trade secret information belonging to Plaintiffs, Defendants did not know or have reason to know that the information was a trade secret or that it was acquired by improper means. 18 U.S.C. 1839(3); 688.002(2), Fla. Stat.

[ECF Nos. 70; 73].

Defendants argue that these defenses are sufficiently detailed to provide Plaintiffs notice and are each tied to a specific cause of action. The Undersigned agrees that no additional information is needed: the affirmative defenses are tied to a specific cause of action and put the opposing side on notice of the defense. *Jackson v. City of Centreville*, 269 F.R.D. 661, 662 (N.D. Ala. 2010) ("[T]he Eleventh Circuit has stressed providing notice as the purpose of Rule 8(c): '[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it.'" (quoting *Hassan v. USPS*, 842 F.2d 260, 263 (11th Cir. 1988))).

For the foregoing reasons, the Undersigned **respectfully recommends** the District Court **deny** Plaintiffs' motion to strike Defendants' affirmative defenses.

## IV.     Conclusion

For the reasons discussed above, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiffs' motion to dismiss Defendant Angelstone's Counterclaims and strike Defendants' affirmative defenses 9, 11, 16, 17, 18, and 23-29.

## V.     Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on October 26, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

24

**<u>Copies furnished to:</u>**

The Honorable Federico A. Moreno
All counsel of record